## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL ROTENBERG AND SHLOMO MARKS, and on behalf of themselves and all others similarly situated, | Case No. 2:25-cv-00438-NJC-SIL |
| Plaintiffs, | **This document relates to:** Case No. 2:25-cv-00496-NJC-SIL Case No. 2:25-cv-00566-NJC-SIL |
| v. | |
| TOWN OF HEMPSTEAD and BUSPATROL AMERICA, LLC, | |
| Defendants. | |

| | |
|---|---|
| SHIRLEY LANE and STACEY THOMAS, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-00566-NJC-SIL |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TOWN OF HEMPSTEAD and BUSPATROL AMERICA, LLC, | |
| Defendants. | |

| | |
|---|---|
| GUY TSADIK, on behalf of himself and all others similarly situated, | Case No. 2:25-cv-00496-NJC-SIL |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| TOWN OF HEMPSTEAD and BUSPATROL AMERICA, LLC, | |
| Defendants. | |

Plaintiffs Shirley Lane ("Lane"), Stacey Thomas ("Thomas") and Guy Tasdik ("Tasdik") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their respective attorneys, Hach Rose, Schirripa and Cheverie LLP ("HRSC") and Lifshitz Law PLLC ("Lifshitz Law"), bring this class action against Defendants Town of Hempstead ("Hempstead" or the "Town") and BusPatrol America, LLC ("BusPatrol") (collectively, "Defendants") and allege on personal knowledge as to themselves and the investigation of Plaintiffs' counsel, and information and belief as to others, as follows:

## I.    INTRODUCTION

1.      This is a putative class action brought against Defendants seeking damages sustained by Plaintiffs and the Class members as a direct and proximate result of Defendants' fraudulent concealment and/or inducement and unjust enrichment in connection with Defendants' practice of routinely certifying unauthorized and invalid Notices of Liability ("NOL"s). alleging violations of New York Vehicle and Traffic Law ("VTL") §§ 1174(a) and 1174-a, and Town of Hempstead Code ("Hempstead Code") Chapter 186 (collectively, "Stop-Arm-Laws").

2.      .In pertinent part, VTL § 1174(a) sets forth the legal regime under which penalties may be imposed on drivers when they overtake and pass a stopped school bus, provided that certain conditions are met, including that the bus (i) activates a "stop-arm"; (ii) has stopped in relation to receiving or discharging school bus passengers; and (iii) has appropriate markings and equipment, such as flashing lights necessary to warn drivers of a stopped bus.

3.      To aid in the enforcement of VTL § 1174(a), VTL§ 1174-a provides for the creation of Stop-Arm Law Programs by authorizing counties, cities, towns, and or villages within New York State to enter into agreements with local school districts for the installation and

operation of school bus photo violation monitoring systems ('School Bus Cameras") on school buses.

4.      As a mandatory precondition for the installation and operation of School Bus Cameras on school buses, VTL § 1174-a stipulates that "no mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless such county, city, town or village and such district *enter an agreement for such installation and operation*."[1]

5.      Hempstead Code § 186-2(B)(2) similarly provides that, under a program pursuant to VTL § 1174-a, "[n]o mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless the Town *and such school district enter into an agreement for such installation and operation*."

6.      Upon information and belief, Defendants have caused School Bus Cameras, either directly or indirectly, to be installed and operated on school buses within the Town of Hempstead without authorization from the proper school districts, resulting in the issuance of NOLs in violation of the requirements of VTL § 1174-a.

7.      As reported by *Newsday* on January, 23, 2025, the school districts of Baldwin, Hempstead, Lawrence Union Free School District ("Lawrence") and Valley Stream Union Free School District 13 ("Valley Stream") (collectively the "Non-Participating Districts") never agreed with the Town of Hempstead to participate in the school bus Stop-arm violations program. Leaders of each of the four districts confirmed to *Newsday* that the districts had not opted into the program.[2]

---

[1] All emphasis has been added unless otherwise indicated.
[2] Payton Guion, *Town of Hempstead issued 80,000 school bus camera tickets in districts that don't participate in program*, NEWSDAY, Jan. 23, 2025, available at https://www.newsday.com/long-island/investigations/hempstead-buspatrol-camera-tickets-ik8spyib.

8.       Despite this, the Town of Hempstead issued more than 80,000 Notices of Liability for purported violations of VTL § 1174-a in those four school districts over the prior two years – a total of $20 million.[3] A January 24, 2025 *Newsday* article also reported that the Town Attorney, John Maccarone, sent a letter to BusPatrol demanding refunds to all drivers who were improperly fined. A video embedded in the online version of the article noted that. the Town of Hempstead is "the authority who issues the tickets," with the Town receiving 55% of the revenue and Bus Stop receiving 45% of the revenue generated from the program.[4] In 2023 and 2024, ***three the four school districts alone accounted for more than 26% of the total NOLs issued for bus stop violations in the entire Town***.[5]

9.       Despite Maccarone's previous assurances, as reported by *Newsday* on June 1, 2025, the Town reversed course and now maintains that "BusPatrol conducted 'a thorough review … of their policies and practices' and found 'no violations were improperly issued in the instances in question.'"[6] A spokesman for the Town refused to "answer multiple questions about Maccarone's statement and if it means no bus camera tickets will be refunded or dismissed."[7] The *New York Post* described this change of position as a "flip" and a "stunning recent reversal."[8]

---

[3] *Id.*

[4] Payton Guion, *Hempstead Town: Toss, refund BusPatrol tickets improperly issued in school districts that didn't join program*, NEWSDAY, Jan. 24, 2025, available at https://www.newsday.com/long-island/investigations/hempstead-bus-camera-tickets-k8fa7q6s.

[5] Payton Guion, *Bus camera tickets in nonparticipating school districts are legitimate, BusPatrol tells* Hempstead, NEWSDAY, May 30, 2025, available at https://www.newsday.com/long-island/investigations/hempstead-bus-camera-tickets-rw466grb.

[6] *Id.*

[7] *Id.*

[8] Brandon Cruz, *Hempstead flips on Long Island school-bus-cam controversy, now claims $20M in traffic tickets are legit*, NEW YORK POST, June 1, 2025, available at https://nypost.com/2025/06/01/us-news/hempstead-flips-on-school-bus-camera-scandal-now-claims-20m-in-traffic-tickets-are-legit/.

10.     The Town's change of tune occurred only after this lawsuit and the other two consolidated actions were filed regarding the issuance of tickets in the Non-Participating Districts.  It also occurred after *Newsday* reported that, as a result of a December 20, 2023 amendment to the Town of Hempstead's agreement with BusPatrol, the Town of Hempstead could be on the hook for some $20 million in refunded school bus camera tickets because of [the] amendment … if the town were found to be issuing tickets without authority." [9] The article quoted Paul Sabatino, an attorney and former Suffolk County legislative counsel, stating that the amendment gives BusPatrol "'a strong argument that [the company] has managed somehow to limit its liability to $250,000'" and that "'I [Sabatino] can't see a logical reason to do that in 2023, unless somebody someplace – and I think it's likelier that it was BusPatrol –figured out they were doing something that violated the statute.'"[10]

11.     Without the agreement of the Non-Participating Districts, the Defendants unlawfully installed school bus photo violation monitoring systems and issued NOLs to registered owners and/or lessees of motorized vehicles for Stop-bus violations within those school districts and have routinely collected fines for these unauthorized and invalid NOLs. Such issuances of the NOLs were unlawful applications of VTL 1174-a and Town Code Chapter 186 in contravention of the terms of the statute and in violation of Plaintiffs' and the Class's rights.

12.     Defendants' conduct relating to VTL § 1174-a and Town Code Chapter 186 served to unjustly enrich Defendants; to convert the property of Plaintiffs and the Class; to negligently misrepresent Plaintiffs' and the Class's legal obligation to pay fines for violations of VTL § 1174 and/or Town Code Chapter 186; to induce Plaintiffs and the Class to pay fines that

---

[9] Payton Guion, *Refunding $20M in school bus camera tickets could fall to Town of Hempstead*. NEWSDAY, Feb. 14, 2025, available at https://www.newsday.com/long-island/investigations/hempstead-bus-camera-tickets-rw466grb.
[10] *Id.*

they did not lawfully owe; to conceal from Plaintiffs and the Class that such fines were not lawfully imposed; to impose fines upon Plaintiffs and the Class without reasonable cause; and to engage in a scheme of deceptive business practices.  As a result of Defendants' misconduct, Plaintiffs and the Class have suffered injury in fact, including economic damages in the form of fines paid and the threat of ongoing violations of the VTL and the Hempstead Code.

13.    Plaintiffs also bring this action seeking declaratory judgment in accordance with Rule 57 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and 28 U.S.C. § 2201, declaring the practices complained of herein related to the issuance of NOLs for Stop-arm Violations are unlawful under law.

## II.    THE PARTIES

### A.    Plaintiffs

14.    Plaintiff Shirley Lane is a citizen of the State of New York and a resident of Nassau County.  Plaintiff Lane holds a valid New York State driver's license and is authorized to and does operate a motor vehicle in the State of New York.  As set forth herein, Plaintiff Lane improperly received a NOL related to an alleged violation of VTL § 1174(a) and Town Code Chapter 186 in the Lawrence School District, and after contesting the ticket and being found guilty by a traffic court, paid a $250.00 fine.

15.    Plaintiff Stacey Thomas is a citizen of the State of New York and a resident of Nassau County.  Plaintiff Thomas holds a valid New York State driver's license and is authorized to and does operate a motor vehicle in the State of New York.  As set forth herein, Plaintiff Thomas improperly received NOL on three separate occasions pursuant to VTL § 1174 and Town Code Chapter § 186-2 in the Lawrence School District.  Plaintiff Thomas paid each of these NOLs.

16.     Plaintiff Guy Tsadik is a citizen of the State of New York and a resident of Nassau County. Plaintiff Tsadik holds a valid New York State driver's license and is authorized to and does operate a motor vehicle throughout the State of New York. As set forth herein, Plaintiff Tsadik improperly received NOLs on three separate occasions pursuant to VTL § 1174 and Town Code Chapter § 186-2 in the Lawrence School District.  Plaintiff Tsadik paid 2 out of the 3 NOLs.  For one, Plaintiff Tsadik is awaiting a hearing.

**B.     Defendants**

17.     Defendant Town of Hempstead is a municipal corporation duly existing under and by virtue of the laws of the State of New York, with its principal office located at 1 Washington Street, Hempstead, New York.

18.     Defendant BusPatrol, LLC ("BusPatrol") is a limited liability corporation with its principal place of business at 8540 Cinder Bed Road, Suite 400, Lorton, VA 22079. BusPatrol is incorporated in the State of Delaware and is registered with the New York State Department of State as a foreign limited liability company in New York County.

19.     BusPatrol is a private, for-profit company that contracts with local governments to install equipment on buses to extend a "Stop-Arm" to warn motorists to stop and not pass a bus that is stopped to pick up or drop off passengers, monitor compliance with Stop-Arm statutes and regulations, gather evidence, identify and issue notices, compile evidence packets, and collect and disburse fees paid relating to alleged stop arm violations.  In exchange, BusPatrol receives a substantial portion of the revenues received, including 45% of the revenue from the Town of Hempstead program, with the Town receiving 55%.

20.     In this connection, BusPatrol markets itself as "[t]he world's most trusted &

deployed stop-arm safety program,"[11] BusPatrol states that it provides a "Turnkey" and "seamless stop-arm program"[12] at "No Cost to Communities."  As part of this program, it supplies and installs the bus camera system, manages traffic citations, provides Cloud-Based Software for Online Viewing", a "Secure Payment Processing Portal & Services;", "Evidence Packages for Law Enforcement" "Ongoing Support & Maintenance of Safety Technology," "Call Center Violator Support" "Training Support for Stakeholders", and "Monthly Reports & Access to Data" for municipalities, towns and school districts using the system.[13]

21.    BusPatrol further states on its website that "BusPatrol's AI-enabled stop-arm camera school bus safety program is provided at no cost.  This is made possible through a "violator-funded business model."[14]  Thus, this program has been attractive to cash-starved counties and municipalities because the services require no capital outlay but are fully funded through the revenue generated by the Stop-Arm program.

22.    All or almost all of BusPatrol's revenues, profit and growth come from its share of fines paid by registered owners and/or lessees of motorized vehicles in jurisdictions which have signed onto its program.  Therefore, BusPatrol, along with the jurisdictions which have entered into agreements with BusPatrol have an incentive to maximize the amount of fines that are assessed.

23.    BusPatrol, in accordance with its standard agreements, requires localities to perform only a perfunctory role in issuing, collecting, and enforcing Stop-Arm Law Programs. BusPatrol performs all other duties and responsibilities associated with the implementation and

---

[11] *See* https://buspatrol.com/.
[12] *Id.*
[13] *Id.*; How it Works, Reducing Stop-Arm Violations at No Cost to Communities, BUSPATROL, https://buspatrol.com/how-it-works/.
[14] *Id.*

enforcement of the Stop-Arm Law Programs.

24.      However, per the agreement entered into between BusPatrol and the Town (the "Master Agreement"), the Town of Hempstead plays its own important role in the enforcement of the Stop-Arm laws. Specifically, the Town directly participates in facilitating BusPatrol's enforcement of the Stop-Arm Laws, arranges for an enforcement technician (trained by BusPatrol) to review potential Notices of Liability, reviews all BusPatrol reports, and reviews BusPatrol's invoices for payment.  Notices of Liability issued by BusPatrol include a declaration by a Town employee certifying that "there is sufficient evidence that a violation of NY VTL 1174-a did occur, as more fully described herein, for which the above named vehicle owner is liable pursuant to Chapter 186 of the Code of the Town of Hempstead and NY VTL 1174-a." Also, the evidence package prepared by BusPatrol when a registered owner and/or lessee of a motor vehicle contests a NOL includes a "Technicians Certification" signed by the Town employee certifying that the accompanying recorded images "depict[] a motor vehicle bearing registration number [] being used in violation of New York State Vehicle and Traffic Law Section 1174-A."

## III.    JURISDICTION AND VENUE

25.      This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiffs and all or almost all members of the Class are citizens of a state different than that of Defendant BusPatrol, prior putative class actions have asserted the same or similar allegations against Defendants herein, and the amount in controversy exceeds the sum of $5,000,000, exclusive of costs and interest.

26.      This Court has personal jurisdiction over Defendants because the claims

asserted in this complaint arise from Defendants' conduct within this District. Defendants have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on governmental activities and/or a business venture in this District, committed a statutory violation within this District related to the allegations made herein, and caused injuries to Plaintiffs and the putative Class Members, which arose out of the acts and omissions that occurred in the District during the Class Period (defined herein).

27.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.    CLASS ACTION ALLEGATIONS

28.    Plaintiffs brings their claims as a class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of the lessees and/or registered owners of vehicles who were issued NOLs by Defendants pursuant to VTL § 1174-a, Town Code § 186-2, and/or any other associated piece of legislation in the State of New York since January 1, 2022, and who: (i) were issued NOLs for alleged violations of the Stop-Arm Laws within the Town of Hempstead by a School Bus Camera that was operating within school districts that had not yet opted-in to the Stop-Arm Law Programs; and/or (ii) were issued NOLs for alleged violations of the Stop-Arm Laws within the Town of Hempstead by a School Bus Camera that was installed on a school bus owned by, or privately owned and operated under contract with, a school district that had not yet opted-in to the Stop-Arm Law Programs ("the Class").

29.    Excluded from the Class are Defendants, their governing agencies, parents, subsidiaries, affiliates, employees, officers and directors; any co-conspirators; federal

governmental entities and instrumentalities of the federal government; states and their subdivisions, agencies and instrumentalities; any judicial presiding over this matter and the members of their immediate families and judicial staff; and Class counsel.

30.      The members of the proposed Classes are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least tens of thousands of NOLs that have been issued wrongfully. Class members can be identified readily through discovery because Defendants or Nassau County maintain records of violations containing contact information for members of the proposed Class.  Class members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

31.      Plaintiffs' claims are typical of the claims of the Class, as all Class members were and are similarly affected by Defendants' wrongful conduct in violations of the statutory and common law protections complained of herein.  Plaintiffs and each of the Class members received NOLs that were wrongfully issued by Defendants.  Defendants knowingly concealed, suppressed, and/or misrepresented or omitted that the NOLs at issue herein were not authorized by the local school boards, with the intent that Plaintiffs and other Class members rely thereon in order to coerce the Plaintiffs into wrongly paying fines and fees to Defendants.  Plaintiffs and the other Class members have sustained substantial damages, resulting from Defendant's omissions and/or misrepresentations related to the NOLs.

32.      Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and have retained counsel competent and experienced in class action and consumer fraud litigation.  Plaintiffs and their counsel are aware of no conflicts of interest

between Plaintiffs and the other members of the putative Class.  Plaintiffs and their counsel are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution.  Plaintiffs' attorneys are competent in the relevant areas of the law, have sufficient experience to vigorously represent the Class and have the resources to ensure that this litigation will not be hampered by a lack of financial capacity.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them.

34.     Given the common NOLs issued to Plaintiffs and the Class, and the uniform misrepresentations and omissions regarding the validity of the monitoring process itself, all not disclosed to the Plaintiffs and members of the putative Class, Plaintiffs are not aware of any difficulties in managing the action as a class action.  The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

35.     Pursuing separate actions can also create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

36.     Common questions of law and fact exist as to all putative Class members and predominate over any questions solely affecting individual Class members. Among the questions

of law and fact common to the Class are:

(a)        whether Defendants were operating and/or aiding and abetting the operation of school bus monitoring system(s) on school bus(es) in violation of New York VTL § 1174-a and Town Code § 186-2;

(b)        whether Defendants issued or caused to be issued NOLs for alleged violations of New York VTL § 1174-a and Town Code Chapter 186 that occurred within school districts that had not entered into an agreement in violation of those provisions.

(c)        whether Defendants were issuing or causing to be issued NOLs that falsely represented an obligation to pay fines for alleged violations of New York VTL § 1174-a and Town Code Chapter 186 that occurred within school districts that had not entered into an agreement with the Town of Hempstead in violation of New York VTL § 1174-a and Town Code § 186-2;

(d)        whether the issuance of such NOLs caused or induced Class members to incur and/or pay the monetary fines stipulated on those NOLs despite the fact that the violations alleged on the NOLs occurred within school districts that had not entered into an agreement in violation of New York VTL § 1174-a and Town Code § 186-2;

(e)        whether Defendants fraudulently or negligently induced Plaintiffs and Class members to remit payment and associated fees for unauthorized Stop-Arm Violations;

(f)        whether Defendants routinely approved and collected fines for unauthorized and invalid NOLs alleging Stop-arm Violations that contained false certifications;

(g)        whether Defendants were unjustly enriched due to its issuance of unauthorized NOLs which contained misrepresentations or omissions of information designed to induce registered owners and/or lessees of motorized vehicles to remit payment for violations of VTL § 1174 and Hempstead Code Chapter 186;

(h)        whether BusPatrol aided and abetted Town of Hempstead's tortious conduct as alleged herein;

(i)        whether Plaintiffs and the Class members are entitled to damages as a result of Defendants' unlawful and improper conduct;

(j)        whether Defendants should be enjoined from future violations of VTL §1174-a and/or Hempstead Code § 186-2(B)(2) since the Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief and/or corresponding declaratory relief is appropriate respecting the Class as a whole.

37.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the

Class for the full amount of any loss suffered by Plaintiffs and the Class and any other actual,

statutory or other applicable damages.

38.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive and declaratory relief with respect to the members of the Class as a whole.  Declaratory judgment and injunctive relief is also appropriate to prevent Defendants from engaging in ongoing or future violations.

39.     Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

## V.    FACTUAL ALLEGATIONS

### A.    VTL § 1174

40.     In 1956, the New York State Legislature enacted VTL § 1174 (the "Underlying Charging Violation"), which made it a violation to pass a school bus under certain conditions, when a bus was either loading or unloading passengers. It states in relevant part:

> Overtaking and passing school bus. (a) The driver of a vehicle upon a public highway, street or private road upon meeting or overtaking from either direction any school bus marked and equipped as provided in subdivision twenty of section three hundred seventy-five of this chapter which has stopped on the public highway, street or private road for the purpose of receiving or discharging any passengers, or which has stopped because a school bus in front of it has stopped to receive or discharge any passengers, shall stop the vehicle before reaching such school bus when there is in operation on said school bus a red visual signal as specified in subdivision twenty of section three hundred seventy-five of this chapter and said driver shall not proceed until such school bus resumes motion, or until signaled by the driver or a police officer to proceed….

### B.    The Enactment of VTL §1174-a and the Creation of the Stop Arm Violation Program in New York State

41.     On August 6, 2019, former New York Governor Andrew Cuomo signed into law an amendment to the VTL § 1174-a, which assesses liability to the registered owner and/or lessee of a motor vehicle where the vehicle violated VTL § 1174(a).

42.     Specifically, VTL § 1174-a was created for the purpose of offering counties,

14

cities, towns, and/or villages throughout the State of New York the opportunity to work with local school districts to adopt programs by which school bus photo violation monitoring systems would be used to help enforce the existing provisions of VTL § 1174.[15]

43.      The newly added section authorized and empowered the counties, towns or villages to equip school buses to operate "school bus photo violation monitoring systems," which could be either stationary or mobile, and were designed to capture images and/or video of vehicles violating VTL § 1174(a).

44.      Critically, VTL § 1174-a(a)1 provides that such monitoring systems could be installed and operated only if the county, city, town, or village entered into an agreement with the school district in which the installation and operation is to occur:

> Such demonstration program shall empower such county, city, town or village to install and operate school bus photo violation monitoring systems which may be stationary or mobile, and which may be installed, ***pursuant to an agreement with a school district*** within such county, city, town or village, on school buses owned and operated by such school district or privately owned and operated for compensation under contract with such district. Provided, however, that (a) no stationary school bus photo violation monitoring system shall be installed or operated by a county, city, town or village except on roadways under the jurisdiction of such county, city, town or village, and (b) ***no mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless such county, city, town or village and such district enter into an agreement for such installation and operation***.  [Emphasis added.]

45.      A unique element of this violation is that it is issued to the lessee and/or registered owner of the vehicle, regardless of whether they were the one driving the vehicle or even aware that the car was being driven at all, as the amendment provides for liability for the owner of a vehicle who passes a bus that is part of this program.  Violations given pursuant to this program can result in fines of $250.00 for a first violation, $275,00 for a second violation and $300.00 for a third or subsequent violation an 18-month period and a penalty not in excess of

---

[15] *See* New York VTL § 1174-a.

$25.00 for each failure to respond to a notice of liability within the prescribed time period. *See* VTL § 1174-a(e).

46.     In accordance with this law, local laws and ordinances were adopted throughout the State of New York, authorizing the installation, and operating of school bus photo violation monitoring systems on buses. However, notwithstanding the provisions of any local laws or ordinances enacted in furtherance of VTL § 1174-a, that statute still mandates that an agreement be reached with a school district in order for school bus monitoring systems to be installed or operated within that school district.

### C.     Town of Hempstead's Institution of the Stop-Arm Violation Program

47.     Effective April 1, 2022, the Town of Hempstead enacted Chapter 186 of the Town of Hempstead Code ("Failure to Stop for School Buses"). Section 186-2 authorized the use of school bus monitoring systems in the Town to capture violations of VTL § 1174 and to send NOLs to each owner of each vehicle alleged to be liable for a violation of VTL § 1174(a). Section 186-2(B)(2) also provided, however, that "No mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless the Town and such school district enter into an agreement for such installation and operation."

48.     Under Town of Hempstead Code § 186-3, the owner of a vehicle which violated VTL § 1174 is liable for the monetary penalties specified in VTL § 1175-a(e), with the penalty for each failure to respond to a NOL within the prescribed time period set at $25.00.

49.     As reported in *Newsday*, the Baldwin, Hempstead, Lawrence and Valley Stream School Districts did not enter into any agreements with Defendants to install such monitoring measures and equipment, as required by VTL § 1174-a and Hempstead Code § 186-2(B)(2).

50.     Despite the absence of mandatory agreement between the Town of Hempstead

16

and the four school districts to install and operate the bus stop operating equipment, Defendants nevertheless issued NOLs to registered owners and/or lessees of vehicles which were captured in photos purportedly violating VTL § 1174(a) in those districts and. assessed fines for those purported violations. As such, the NOLs are in contravention of VTL § 1174-a and Hempstead Code § 186-2(B)(2), and in violation of Plaintiffs' and the Class's rights.

51.    Defendants were aware and failed to disclose to those persons issued NOLs that the school districts of Baldwin, Hempstead, Lawrence and Valley Stream did not enter into agreements with the Town of Hempstead. Registered owners of vehicles were misled by Defendants into believing that the NOLs issued to them for alleged violations in those school districts were valid, and thereby coerced them into paying wrongfully assessed fines and associated fees.

52.    Defendants knowing the inconvenience and thought process of persons determined to issue the invalid NOLs to registered vehicle owners in order to profit. Defendants made a determination that many persons sooner pay fines than contest them in order to avoid taking time from their day, taking off from work, to avoid hiring an attorney, and/or potentially being responsible for additional fines and penalties for a failure to pay the NOL that should have never been issued.

53.    Defendants were wrongfully enriched and profited from every payment made on each one of these NOLs, as 55% of the fines and fees associated with it and collected were remitted to the Town of Hempstead by BusPatrol, with BusPatrol retaining the other 45%.

**D.    The Town of Hempstead Contracts with BusPatrol to Implement and Monitor Compliance with the Stop-Arm Program**

54.    In order to enforce Hempstead Code Chapter 186 and administer the Stop-Arm Law Program pursuant to the Code, the Town of Hempstead entered into a "Master

Agreement" agreement with BusPatrol, dated February 1, 2022, for a "School Bus Stop Arm Enforcement Program" (the "Master Agreement"). The Master Agreement became effective "as of the date of the first Notice of Violation."

55.     The Master Agreement incorporated by reference an earlier Master Agreement between BusPatrol America and the County of Dutchess (the "Dutchess Agreement"), making almost all of the terms applicable to the Town.[16] The Master Agreement, however, did include further provisions regarding payment, reimbursement of administrative and adjudication-related expenses providing for an ongoing public awareness and marketing administration and support.[17]

56.     Under the Master Agreement, local government officials performed only a small role in issuing, collecting and enforcing VTL § 1174-a. BusPatrol handles almost the entire ticketing process from inception to end,  Under the Master Agreement, BusPatrol is responsible to install and maintain cameras and other equipment on school buses; use Artificial Intelligence to identify violations; confirm visually through photographic evidence that a violation has occurred;  design the NOL forms that get issued to registered owners and/or lessees of motorized vehicles; issue NOLs to purported violators; collect and disburse fines; produce evidence packages for use in court; train local traffic prosecutors and court personnel on the law and enforcement of 1174-a; track court proceedings; and even arrange for positive press coverage. As part of the process, "[a]ll SAEs with potential violations are sent to trained BusPatrol reviewers … who individually review the SAEs to validate potential violations, and flag them to be transferred to a processor."  Also, "BusPatrol processing experts, known as Processors, examine the video…, validate that a potential violation has occurred  and assembles

---

[16] *See* Master Agreement at § B.1 ("All reference to 'Dutchess County; or 'County; are hereby replaced with "Town of Hempstead" or "Town".
[17] Master Agreement at §§ B.2 and B.3.

the digital evidence package,"[18]

57.    While an employee of the Town supposedly makes the determination of whether a violation has occurred using a portal controlled by BusPatrol, they are trained by BusPatrol to review video and photo data provided by BusPatrol in an "evidence package" prepared by a local BusPatrol office located within the Town, and to check an on-screen button mark "approve" if the video meets the criteria identified by BusPatrol. A BusPatrol training presentation for Town of Hempstead employees shows how the approval is undertaken:







58.    That review is highly cursory, at best. According to *Newsday*, a single official in the Town of Hempstead approved "as many as seven school bus camera tickets per minute" and "also approved nearly 2,600 school bus camera tickets in a two-day period, data shows." Also, three technicians in the Town of Hempstead reviewed 3,963 potential citations on June 8-9, 2023, over the course of 20 hours, approving 99% of them."[19]    Clearly, speed, rather than

---

[18] Dutchess County Agreement at 36-37.
[19] *See* Lorena Mognelli, *Hempstead BusPatrol tickets: Data from 2-day period shows high*

accuracy, was the criteria, and BusPatrol designed a program to facilitate such a quick review.

59.     When a Town official clicks "Approve", BusPatrol then prepares and sends a Notice of Liability to the vehicle Owner.  The BusPatrol-prepared Notice of Liability states that "The vehicle identified in this notice was recorded passing a stopped school bus on the date and at the location noted herein, **in violation of New York State Vehicle and Traffic Law ("VTL") 1174-a.  In accordance with VTL 1174-a and Chapter 186 of the Code of the Town of Hempstead, NY, the vehicle owner is liable as follows**…":



60.     The NOL also contained a form "Specialist Certification" prepared by BusPatrol and purportedly signed by a Town of Hempstead employee stating as follows:

> **SPECIALIST CERTIFICATION**
>
> Based on my review and inspection of the evidence, including recorded images, I swear or affirm under penalty of perjury that there is sufficient evidence that a violation of NY VTL 1174(a) did occur, as more fully described herein, for which the above named vehicle owner is liable pursuant to Chapter 186 of the Code of the Town of Hempstead and NY VTL 1174-a.
>
> SPECIALIST                    ID NUMBER

61.     In reality, the signature is a photocopied facsimile, and all the Town employee

---

*approval rate, quick review process*, NEWSDAY, July 5, 2025, available at https://www.newsday.com/long-island/bus-patrol-ticket-approval-hempstead-suffolk-county-c0gk3h6n.

did was to click "accept" in the BusPatrol-provided software. The phone number listed for questions by the registered owner and/or lessee of a motor vehicle (877-504-7080) is a BusPatrol "Citation Support" phone number.[20] BusPatrol would then mail the NOLs to the registered owner and/or lessee of a motorized vehicle and demand payment, as set forth above.

62.      In the event a registered owner and/or lessee of a motor vehicle contested a NOL, the owner would face a traffic prosecutor trained by BusPatrol who relied on the evidence packet prepared by BusPatrol, with the photographic evidence remaining in BusPatrol's custody. The evidence packet included a form "Technician's Certification" signed by a Town of Hempstead employee certifying that the recorded images accompanying the certification depict "a motor vehicle … being used in violation of New York State Vehicle and Traffic Law Section 1174-A…" The top of the certification listed the address as "School Bus Safety Program, PO Box 1310, Newington VA 22122-1310," a post office address maintained by or on behalf of BusPatrol.

63.      However, the NOLs and Technician's Certifications are deficient, as well as false and misleading, as they fail to state: (i) whether the NOLs issued for alleged violations of the Stop-Arm Laws within the Town of Hempstead were from a School Bus Camera that was operating within school districts that had not yet opted-in to the Stop-Arm Law Programs and in which specific school district the alleged violation occurred; and/or (ii) whether the NOLs issued for alleged violations of the Stop-Arm Laws within the Town of Hempstead were from a School Bus Camera that was installed on a school bus owned by, or privately owned and operated under contract with, a school district that had not yet opted-in to the Stop-Arm Law Programs.

---

[20] *See* phone icon at top right side of https://buspatrol.com/.

E.    **The Master Agreement Is Amended To Limit The Town's Ability To Recover From BusPatrol**

64.    On December 22, 2023, BusPatrol and the Town agreed to an amendment to the Master Agreement (the "December 22 Amendment") which inserted a new provision related to indemnification for "***all reasonable attorneys' fees and costs, not to exceed $250,000 in any given year, resulting from the defense of a challenge to the Stop Arm Program under VTL § 1174-A filed by an individual or entity other than the Town ("Third Party") based on its constitutionality or the Town's authority to enforce it within the Town's boundaries.***"

65.    Before the agreement was entered into, a class action lawsuit was filed against the Town of Hempstead on November 28, 2023 (the "*Kadinsky* Action"). The complaint in the *Kadinsky* Action made a number of allegations related to the sufficiency of the evidence used to demonstrate a violation of VTL § 1174-a, but was completely distinct from the allegations presented in the instant action, particularly in that the complaint ***did not make any allegations concerning the Town's authority "to enforce the program within its boundaries***."[21] Nevertheless, the December 22 Amendment changed the Master Agreement in such a way that would seem to circumscribe the extent of BusPatrol's liability to the Town for lawsuits arising out of the Town's jurisdictional authority to enforce the Stop-Arm Law Programs. The impact of the December 22 Amendment only became publicly known with the publication of the February 14, 2025 *Newsday* article.[22]    It appears that, by adding the "enforce the program" clause, BusPatrol put one over on the Town, with the Town changing its position regarding the invalidity of the NOLs issued in the Non-Participating Districts only after the February 14, 2025

---

[21] *See* Complaint filed in *Kadinsky v. Town of Hempstead*, Index No. 619279/2023 (N.Y. Sup. Ct. Nassau Co.) (Nov. 28, 2023).

[22] *See* Payton Guion, Refunding $20M in school bus camera tickets could fall to Town of Hempstead, NEWSDAY, Feb. 14, 2025, available at: https://www.newsday.com/long-island/investigations/buspatrol-school-bus-tickets-er8ray0k

*Newsday* article came out.

**F.    The Lawrence School District Expressly Disavows Such Tickets as "Invalid"**

66.    On November 25, 2024, Lawrence published a letter signed by Murray Forman, its President, stating as follows: "This letter and affidavit  is to confirm that the Board of Education of the Lawrence Union School Free School District (District 15) … has not entered into any agreement with the School Bus safety Program of the Town of Hempstead to issue summonses within the boundaries of the Lawrence Union Free School District."   Citing Hempstead Code § 186-2(B), the letter also stated that "No mobile school bus photo violation monitoring system shall be installed or operated … unless the town and such school district enter into an agreement for such installation and operation."[23]

67.    The letter concluded: "Given that there is no such agreement between the Town of Hempstead and the Lawrence UFSD ***there is no authorization for summonses to be issued on behalf of the Lawrence UFSD at any location within the borders of School District 15. Summonses issued within the boundaries of the district are therefore void and cannot be upheld***."[24]

**G.    The Baldwin School District Calls The Tickets "Baffling" And All Four School Districts Confirm That The Bus Stop Ticketing Program Was Not Authorized**

68.    As reported in *Newsday* on January 23, 2025, the Baldwin school district also described the tickets as lacking authorization:[25]

"It's baffling to me that tickets would be issued ***when they know they did not have the authority to do it***," Baldwin Union Free School District Superintendent

---

[23] *Id.*

[24]*See* Payton Guion, Town of Hempstead issued 80,000 school bus camera tickets in districts that don't participate in program NEWSDAY, Jan. 23, 2025, available at:
https://www.newsday.com/long-island/investigations/hempstead-buspatrol-camera-tickets-ik8spyib

[25] *Id.*

Shari Camhi told Newsday.

69.     *Newsday* also reported that leaders of the Baldwin, Hempstead, Lawrence, and Valley Stream 13 school districts confirmed to *Newsday* that the districts had not approved the issuance of bus camera tickets.  Nevertheless, officials in three of the districts stated that their school buses have been equipped with cameras and one Superintendent stated that those cameras were generating tickets, which would conflict with VTL § 1174-a.[26]

### H.     The Town Tacitly Admits That The 80,000 Tickets Issued In Non-Participating School Districts Were Issued Illegally, But Then Changes Its Mind

70.     The day after *Newsday's* investigation was publicly reported, another *Newsday* article was published on January 24, 2025, this time with the headline "Hempstead Town: Toss, refund BusPatrol tickets improperly issued in school districts that didn't join program."[27] In the article *Newsday* reported that the Town ***essentially admitted*** that the approximately 80,000 tickets issued within non-participating school districts were issued ***without satisfying the requirements set forth in the Stop-Arm Laws***.

71.     In the article, *Newsday* reported that Town Attorney Maccarone sent a letter to Karoon Monfared, the Chief Executive Officer of BusPatrol, "'requesting that all violations issued in nonparticipating districts that violate the New York State statute not only be voided immediately, but also that all monies collected from these violations be redistributed to the affected motorists in an expedient manor.'" The letter also stated that, "[o]ver the past year, I have raised concerns regarding the subject of a recent *Newsday* article that alleges that BusPatrol has issued 80,000 violations over the last two years within school districts where school boards

---

[26] *Id.*

[27] Payton Guinon, *Hempstead Town: Toss, refund BusPatrol tickets improperly issued in school districts that didn't join program*, NEWSDAY, Jan. 24, 2025, https://www.newsday.com/long-island/investigations/hempstead-bus-camera-tickets-k8fa7q6s.

never authorized participation in the school bus cameras program.  This includes Baldwin, Hempstead, Lawrence and Valley Stream District 13, and the concern that this authorization contradicted State and Town law."[28]  Brian Devine, the spokesman for the Town, said in a statement on the same day that "Supervisor Don Clavin is demanding that BusPatrol refund all drivers who have been improperly fined."[29]

72.    According to the article, the Town has denied responsibility for the ticketing within school districts, but BusPatrol has reportedly contested this characterization of Defendants' respective responsibilities, "saying that the Town has final say on which tickets are issued."[30]  In light of these admissions, together with the terms of the Master Agreement, it is clear that both parties bear responsibility for the issuance of tickets under the Stop-Arm Law program.

73.    As noted herein above four months later, the Town of Hempstead reversed its position, with Town Attorney Maccarone now stating that that "BusPatrol conducted 'a thorough review … of their policies and practices' and found 'no violations were improperly issued in the instances in question.'" A spokesman for the Town refused to "answer multiple questions about Maccarone's statement and if it means no bus camera tickets will be refunded or dismissed," and the *New York Post* described this change of position as a "flip" and a "stunning recent reversal."[31]

74.    In fact, according to data published in the same article and by the *New York*

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*; Brandon Cruz, *Hempstead flips on Long Island school-bus-cam controversy, now claims $20M in traffic tickets are legit*, New York Post, June 1, 2025, available at https://nypost.com/2025/06/01/us-news/hempstead-flips-on-school-bus-camera-scandal-now-claims-20m-in-traffic-tickets-are-legit/.

*Post*, following the filing of Plaintiffs' complaints, ticketing in the Non-Participating School Districts plummeted  in the first few months of 2025 to only 416 or 2% of the total tickets issued within the Town of Hempstead during that time period.  By contrast, between 2023 and 2024, ticketing in the Non-Participating School Districts, excluding Valley Stream UFSD 13, accounted for approximately 26% of tickets issued by the Town.[32]

 **I.**  **Plaintiffs Receive NOLs For School Bus Stop Violations**

 75.  On or about March 21, 2024, a vehicle owned by Plaintiff Lane was allegedly captured by BusPatrol's cameras passing a school bus while its stop-arm was extended within the Lawrence school district, resulting in the issuance of an NOL with the citation number TH-2587226, indicating a fine of $250.00.

 76.  Lane pled not guilty and requested a court date.

 77.  On or about January 9, 2025, Lane appeared before the traffic court in Garden City, NY.  Despite there being no agreement by the school districts at issue – and despite the Lawrence school district explicitly disavowing the tickets – Lane was found guilty. Lane had no choice but to pay the fine of $250.00.

 78.  Since the enactment of the Stop-Arm Law Program, a vehicle owned by Plaintiff Thomas has allegedly been captured by BusPatrol's cameras passing a school bus on three occasions within the Lawrence school district, each of which resulting in the wrongful issuance of the following NOLs: (i) citation number TH-3379734; (ii) citation number TH-3405771; and (iii) citation number TH-4342574.

 79.  Each of the foregoing NOLs received by Plaintiff Thomas explicitly stated that the fines associated therewith were in accordance with VTL § 1174-a and Town Code § 186-2.

---

[32] *Id.*

Plaintiff Thomas paid the first two fines assessed to her on December 4, 2024 and the third on August 9, 2025. Given her uncertainty whether NOLs issued for purported school bus stop arm violations in the Lawrence School District would be invalidated by a court Thomas paid the third fine to avoid any late fees or other penalties being assessed against her.

80.    Since the enactment of the Stop-Arm Law Program, vehicles owned by Plaintiff Tsadik have allegedly been captured by BusPatrol's cameras passing a school bus on three occasions within the Lawrence school district, each of which resulting in the wrongful issuance of the following NOLs: (i) citation number TH-1954616; (ii) citation number TH-1966699; and (iii) citation number TH-3241219.

81.    Each of the foregoing tickets received by Plaintiff Tsadik explicitly states that the fines associated therewith are in accordance with VTL § 1174-a and Town Code § 186-2.

82.    Plaintiff Tsadik sought a hearing contesting liability for the NOL with citation number TH-1966699 prior to the payment due date of September 13, 2023, but was never granted a hearing and thus never paid any fine associated therewith; per the image below depicting an online copy of the foregoing NOL, a hearing is still pending to this date:



83.     Plaintiff Tsadik paid the fine for the NOL with citation number TH-1954616.

84.     Plaintiff Tsadik paid the fines assessed to him for citation TH-3241219 under protest on January 28, 2025, before the initial filing of this action, as he had received a notice from BusPatrol in the mail warning that if he did not pay the balance due from the foregoing NOL by February 25, 2025, his debt would be sent to a collection agency and would be subject to an additional collection charge.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### FOR VIOLATION OF VTL § 1174-A, HEMSTEAD CODE § 186(2)(B) AND NEW YORK CIVIL RIGHTS LAW § 11
### (Against All Defendants)

85.     Plaintiffs repeat and re-allege the preceding allegations as though set forth fully herein.

86.     As set forth above, the fines issued pursuant to the NOLs described herein were imposed upon individuals whose alleged violation of VTL § 1174-a and Town of Hempstead Code Chapter 186 occurred within a school district that had not entered into an agreement with

the Town of Hempstead regarding participation in the Stop-Arm Law program

87.     Without such agreement between a given school district and the Town, the installation and operation of school bus monitoring systems on school buses within that school district, and Defendants' issuance of NOLs and receipt of monies from registered owners and/or lessees of motorized vehicles based upon purported violations of VTL § 1174(a) or Hempstead Code Chapter 186, captured on those systems, is unlawful.

88.     The Baldwin, Hempstead, Lawrence, and Valley Stream school districts did not agree to participate in the Stop-Arm monitoring program, which Defendants knew.  Defendants therefore had no authority to issue NOLs for alleged Stop-Arm violations occurring within these school districts.

89.     Despite having no authority to issue tickets for alleged Stop-Arm violations in the Baldwin, Hempstead, Lawrence, and Valley Stream school districts, the Defendants issued more than 80,000 NOLs for alleged Stop-Arm violations in these specific school districts.

90.     Despite having no authority under law to issue such tickets, Defendants implemented the Stop-Arm monitoring program in these school districts, issued unauthorized NOLs, prepared Evidence Packages and certifications based upon improperly and/or illegally obtained evidence and willfully took money for purported violations that they were not authorized to take under the applicable statutes.

91.     Defendants' actions were contrary to the statutory authorizations granted to them and, thus, were in violation of the law.

92.     At all relevant times, Defendants represented that Plaintiffs and Class members' NOLs were authorized and valid and evidence therein relied upon were legally and/or properly obtained.

93.    At all relevant times, Defendants failed to notify Plaintiffs and Class members that their NOLs for alleged Stop-Arm Violations were based upon information that was improperly and/or illegally obtained resulting in unauthorized and therefore invalid NOLs and were issued in contravention to the authorizing statute.

94.    Defendants caused Plaintiffs and Class members to incur associated fees for these NOLs that were unauthorized and therefore invalid and which were certified and issued in contravention of the authorizing statute.

95.    Defendants have failed to offer Plaintiffs and Class members full refunds, plus interest, of the fines and associated fees paid for unauthorized and invalid NOLs that were received by Defendants.

96.    Defendants engaged in the above-described actionable statements and/or omissions and/or concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealments, suppressions and omissions which were made in contravention of the authorizing statute.

97.    Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

98.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Class members have sustained economic injury by paying fines and associated fees for unauthorized and invalid NOLs which were issued contravention of the authorizing statute.

99.    To the extent Plaintiffs and Class members pled guilty to the alleged violations in these NOLs, Plaintiffs and Class members would not have done so but for Defendants' misrepresentations and/or omissions which were in contravention of the authorizing statute.

100.    New York Civil Rights Law § 11 requires that the issuance of fines be based

upon "reasonable cause," which cannot possibly exist for the issuance of fines pursuant to the unlawful use of school bus photo monitoring systems. As a result, the NOLs issued by Defendants for alleged Stop-Arm violations within these school districts were invalid as a matter of law. Defendants issued NOLs for alleged Stop-arm Violations to Plaintiff and Class members that were patently invalid as they were unauthorized by statute.

101.    As a result of Defendants' deceptive acts and practices, Plaintiff and Class members who paid Defendants based on their unauthorized and invalid NOLs are entitled to legal and equitable relief, including damages, pre-judgment and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT II
## FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT
### (Against All Defendants)

102.    Plaintiffs repeat and re-allege the preceding allegations as though set forth fully herein.

103.    At all relevant times, Defendants falsely represented to Plaintiffs and the Class members that they were legally obligated to pay fines under the Stop-Arm Laws through the issuance of NOLs and in Evidence Packages used in connection with court proceedings for alleged violations of the foregoing statutes within school districts that had not opted-in to have School Bus Cameras operated within their district or installed on the school buses operated by their district.

104.    Defendants fraudulently concealed the fact that these NOLs were not legally valid, as well as the fact that the Stop-Arm Law Programs did not authorize the issuance of NOLs within the school districts wherein the alleged violations occurred and/or installation of School Bus Cameras on the school buses operated by the school districts wherein the violations

31

occurred.

105.    Defendants' fraudulent concealment of the legal invalidity of the issued NOLs induced Plaintiffs and members of the Class to make payments pursuant to the fraudulent NOLs, as they had no reason to believe that their alleged violations were not legally subject to Stop-Arm Law Program.

106.    Defendants put forth the above-described actionable statements, omissions, and/or concealments with knowledge that such representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such false and/or misleading representations.

107.    Defendants had, and continue to have, a duty to inform Plaintiffs and Class members that the NOLs issued to them were legally null and void, and that payment of the fines outlined therein was not legally required.

108.    Based upon Defendants' false representations, omissions, and/or concealments of these material facts, Plaintiffs and Class members were induced to rely upon Defendants' misrepresentations and/or omissions and to remit payment and associated fees for legally void NOLs.

109.    Plaintiffs and Class members reasonably relied upon Defendants' misrepresentations and/or omissions. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Class members have sustained economic injury by paying fines and associated fees for legally void NOLs.

110.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

111.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

112.    At all relevant times, Defendants falsely represented that the NOLs issued to Plaintiffs and Class members concerning their purported Stop-Arm Violations were legally authorized and sufficient.

113.    At the time Defendants made these representations to Plaintiffs and Class members, Defendants should have known that these representations were false or that Defendants made them without knowledge of their truth or veracity.

114.    Defendants had and continues to have a duty to inform Plaintiffs and Class members that their NOLs related to their alleged Stop-Arm Violations were not legally authorized and therefore not valid.

115.    Defendants intended that Plaintiffs and each member of the Class rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

116.    Among other things, (a) an employee of the Town made false individualized certifications in the NOLs sent to each Class Member and (when contested) a Technician's certification representing that the Class Member's vehicle violated VTI § 1174-a and/or Hempstead Code Chapter 186; and (b) BusPatrol prepared and issued those individualized NOLs as well as the evidence packages that formed the basis of the claimed violations.

117.    These false statements were made to Plaintiffs and the members of the Class in NOLs issues by BusPatrol and containing a certificate signed by a Town of Hempstead

employee, and also in Evidence Packages used in Court hearings when a Class Member sought to contest liability. As a governmental body and its contractor running the "Turnkey" and "seamless stop-arm program," on the Town of Hempstead's behalf,[33] the Town and BusPatrol had a duty to the Class members to make statements in the NOLs and the Evidence Package that were not materially false and misleading.

118.    Additionally, Defendants had a duty to inform the Class that the evidence relied upon in the NOLs were obtained improperly and/or illegally and not in accordance with VTI § 1174-a.

119.    Given the Town of Hempstead's status as a governmental entity and BusPatrol's position as a leader in Stop-Arm monitoring, Plaintiffs and the Class reasonably relied upon Defendants' representations regarding the validity of the NOLs.

120.    Based upon Defendant's false representations and/or omissions and/or concealments of these material facts, Defendants induced Plaintiffs and Class members to rely upon Defendant's misrepresentations and/or omissions and to remit payment and associated fees for unauthorized NOLs concerning alleged Stop-Arm Violations.

121.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Class members have sustained economic injury by paying fines and associated fees for unauthorized NOLs concerning alleged Stop-Arm Violations.

122.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

---

[33] *See* https://buspatrol.com.

**COUNT IV**
**CONVERSION**
**(Against All Defendants)**

123.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth
herein.

124.     Defendants have exercised control over the assets of Plaintiffs and other Class
members by way of unlawfully issuing fines under VTL § 1174-a and Town Code § 186-2, and
in doing so have interfered with their right of possession of those assets.

125.     Each penalty payment was a specific, identifiable sum when paid, which both
Defendant BusPatrol and Defendant Town received a portion of.

126.     Thus, Defendants are liable to Plaintiffs and the Class for conversion.

**COUNT V**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

127.     Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if
fully set forth herein.

128.     Defendants have unlawfully obtained money belonging to Plaintiffs and
members of the Class by issuing invalid and unauthorized NOLs within school districts that have
not come to an agreement pursuant to VTL § 1174-a and Town Code Chapter 186 for the
installation and operation of school bus photo monitoring systems.

129.     Defendants have thus been unjustly enriched through their course of conduct
which increased their revenue at the expense of members of the Class who were not rightly
subject to monetary penalties under the law.

130.     Plaintiffs and members of the Class are entitled to restitution, as it would be
unjust and unconscionable to allow Defendants to benefit from the enforcement of a law that

35

simply does not apply to Plaintiffs and the Class.

131.    By virtue of the inherently invalid and void nature of any NOLs issued for alleged violations within school districts that did not come to an agreement pursuant to VTL § 1174-a and Town Code Chapter 186, the monies collected from Plaintiffs and the Class related to those alleged violations rightly belong to Plaintiffs and the Class.

132.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all revenues, benefits, and other compensation obtained by Defendants from their inequitable and unlawful conduct.

**COUNT VI**
**AIDING AND ABETTING**
**(Against Defendant BusPatrol)**

133.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

134.    As to all the causes of action herein, Defendant BusPatrol unlawfully aided and abetted in the Town's unlawful activities.  Specifically, as set forth herein:

135.    The Town of Hempstead engaged in the fraudulent and wrongful acts regarding the issuance of NOLs as alleged herein.

136.    BusPatrol  had knowledge of the fraudulent and wrongful conduct engaged in by the Town of Hempstead.   For example, as set forth above, a *Newsday* article quoted Paul Sabatino, an attorney and former Suffolk County legislative counsel, stating that an amendment to the Master Agreement gives BusPatrol "'a strong argument that [the company] has managed somehow to limit its liability to $250,000'" and that "'I [Sabatino] can't see a logical reason to do that in 2023, unless somebody someplace – and I think it's likelier that it was BusPatrol –

36

figur*ed out they were doing something that violated the statute*.'" As such, BusPatrol  took active steps in an attempt to limit its liability for the issuance of improper and invalid NOLs as alleged herein. BusPatrol knowingly and substantially participated in the wrongdoing and in fact operated the entire Turnkey" and "seamless stop-arm program" on the Town's behalf, including preparing wrongful NOLs sent to Plaintiffs and the Class members and the preparation of evidence packages for use in court proceedings hearings to enforce the wrongfully issued NOLs.

<u>**COUNT VII**</u>
**DECLARATORY JUDGMENT PURSANT TO 28 U.S.C. § 2201 AND**
**FED. R. CIV. P. RULE 57**
**(Against All Defendants)**

137.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

138.    Plaintiffs seek declaratory judgment to resolve the matter of whether practices of Defendants which entail issuing the NOLs as described above, where there is no statutory authority to do so are in contravention of the VTL 1174-A and Town of Hempstead Code Chapter 186 and constitute a violation of Plaintiffs' and Class members' rights under the New York Civil Rights Law and common law.

139.    Plaintiffs also seek declaratory judgment that Defendants have been and continue to be unjustly enriched through their retention of penalties unlawfully imposed; that Defendants have and continue to convert an identifiable sum of money through their imposition and retention of penalties unlawfully imposed; that Defendants have and continue to engage in negligent misrepresentations, and fraudulent misrepresentations; that Defendants have and continue to fraudulently induce the payment of penalties unlawfully imposed; and that Defendants' imposition and retention of unlawful penalties constitutes a violation of Civil Rights Law § 11.

140.    An actual case or justiciable controversy exists regarding the legality of these practices as Defendants continue to issue these NOLs which are unauthorized and therefore invalid.

141.    The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties and will provide certainty regarding the validity of the issuance of these NOLs as applied to Plaintiffs, the Class and going forward.

142.    By reason of the foregoing, Plaintiffs and Class members are entitled to declaratory judgment declaring that the practices complained of herein are unlawful under the law.

## VII.    PUNITIVE DAMAGES

143.    Due to the willful, intentional, reckless, and wanton conduct of Defendants, which conduct was intended to and did harm the public, punitive damages should be awarded against Defendant BusPatrol.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated Class members, pray for relief and judgment, including entry of an order:

A.    Declaring that the practices complained of herein are unlawful under New York State law;

B.    Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiffs Lane, Thomas, and Tsadik as Class Representatives, and appointing their choice of counsel, HRSC and Lifshitz Law, as Class Counsel;

C.    Directing that Defendants bear the costs of any notice sent to the Class;

D.    Awarding Plaintiffs and the Class members compensatory, statutory, actual, or other monetary damages, in an amount to be determined at trial;

E.    Declaring that Defendants must disgorge, for the benefit of the Class, all or part of the

ill-gotten monies they received from the issuance of unauthorized NOLs or order Defendants to make full restitution to Plaintiffs and the members of the Class;

F.  Awarding restitution and other appropriate equitable relief;

G.  Granting an injunction against Defendants to enjoin it from issuing NOLs in connection with Stop-Arm Violations in school districts that did not agree to install monitoring equipment, as set forth herein;

H.  Granting an Order requiring Defendants to fully and adequately disclose which school districts have not agreed to install monitoring equipment, as set forth herein;

I.  Ordering a jury trial and damages according to proof;

J.  Enjoining Defendants from continuing to engage in the unlawful and unfair acts and practices as alleged herein;

K.  Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses;

L.  Rewarding Plaintiffs and their counsel reasonable attorneys' fees for any discontinuance by Defendants of issuance of NOLs in the Non-Participating Districts since the filing of the consolidated action;

M.  Awarding pre-judgment and post-judgment interest;

N.  Awarding punitive damages against Defendant BusPatrol; and

O.  Granting Plaintiffs and the Class such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated:  September 5, 2025

Respectfully submitted,

/s/ *Daniel Rehns*
Frank R. Schirripa
Daniel Rehns
Kurt Hunciker
Jay P. Saltzman
**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**
112 Madison Avenue 10th Floor
New York, New York 10016

Main: 212-213-8311
Facsimile: 212-779-0028
fschirripa@hrsclaw.com
drehns@hrsclaw.com
khunciker@hrsclaw.com
jsaltzman@hrsclaw.com

*Attorneys for Plaintiff Lane*

/s/ Joshua M. Lifshitz
Joshua M. Lifshitz
John Ciulla
LIFSHITZ LAW PLLC
1190 Broadway
Hewlett, NY 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
jlifshitz@lifshitzlaw.com
jciulla@lifshitzlaw.com

*Attorneys for Plaintiff Tsadik*